Matter of Fleetwood Drywall Inc. (Commissioner of Labor) (2022 NY Slip Op 00083)





Matter of Fleetwood Drywall Inc. (Commissioner of Labor)


2022 NY Slip Op 00083


Decided on January 6, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 6, 2022

531602
[*1]In the Matter of Fleetwood Drywall Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:November 18, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Phillips Lytle LLP, Rochester (Kevin J. Mulvehill of counsel), for appellant.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for respondent.



Lynch, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed December 11, 2019, which ruled that Fleetwood Drywall Inc. was liable for additional unemployment insurance contributions on remuneration paid to certain installers and finishers of drywall.
Fleetwood Drywall Inc. is a company that provides, among other things, drywall installation and finishing services to general contractors and individual homeowners primarily for wood-frame residential construction projects, as well as for commercial and multiple dwelling building construction. To provide these services, Fleetwood prepares construction bids — which include, among other information, the price per square foot of the drywall that it purchases and provides — to solicit and retain the services of drywall installers and finishers (hereinafter collectively referred to as subcontractors), which Fleetwood deems to be independent contractors for purposes of the unemployment insurance law. As a result of an audit for the period January 1, 2012 to December 31, 2014, the Department of Labor issued an initial determination assessing Fleetwood additional unemployment insurance contributions on remuneration paid to certain subcontractors during the time period in question. Hearings ensued, after which an Administrative Law Judge (hereinafter ALJ) sustained the Department's determination assessing additional unemployment insurance contributions. Specifically, the ALJ found that Fleetwood had not rebutted the statutory presumption of an employment relationship set forth in Labor Law § 861-c, which is part of the Construction Industry Fair Play Act (see Labor Law art 25-B [eff. Oct. 26, 2010] [hereinafter the Fair Play Act]), because Fleetwood failed to establish, among other things, that its subcontractors met three of the 12 statutory criteria that are required to be deemed separate business entities (see Labor Law § 861-c [2] [a]-[l]). Upon administrative appeal, the Unemployment Insurance Appeal Board adopted the findings of fact and conclusions of law made by the ALJ and affirmed. Fleetwood appeals, arguing that it successfully rebutted the statutory presumption of an employment relationship by establishing all of the requisite statutory criteria needed to deem the subcontractors separate business entities under the Fair Play Act and for purposes of the unemployment insurance law.
The determination of the Board, "if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136-137 [2020]). "The Fair Play Act, codified in Labor Law article 25-B, was enacted as a measure to curb widespread abuses in the construction industry stemming from the misclassification of workers as independent contractors resulting [*2]in unfavorable consequences for both the workers and the public" (Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d 1373, 1374 [2017]; see Labor Law § 861-a). Consistent with this objective, the Fair Play Act contains a statutory presumption that a person performing services for a contractor [FN1] engaged in construction shall be classified as an employee unless it is demonstrated that such person is an independent contractor or a separate business entity (see Labor Law § 861-c [1], [2]; Matter of Tuerk [Adelchi Inc.-Commissioner of Labor], 184 AD3d 295, 297 [2020]; Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d at 1374; see also Labor Law § 511 [1] [1-b]).[FN2] The separate business entity test, codified in Labor Law § 861-c (2), sets forth 12 criteria to be used to determine whether a person or "business entity, including any sole proprietor, partnership, corporation or [contractor]" (Labor Law § 861-c [2] [a]), "is a separate business entity and, thus, not subject to the presumption that he or she is an employee of the contractor" (Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d at 1375; see Labor Law § 861-c [2] [a]-[l]). "[A]ll of the criteria must be met to overcome the statutory presumption of an employment relationship" (Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d at 1375). As relevant to the instant dispute, the separate business entity test requires that the person "has a substantial investment of capital in [his or her] business entity beyond ordinary tools and equipment and a personal vehicle" (Labor Law § 861-c [2] [c]), "owns the capital goods and gains the profits and bears the losses of [his or her] business entity" (Labor Law § 861-c [2] [d]) and "includes services rendered on a Federal Income Tax Schedule as an independent business or profession" (Labor Law § 861-c [2] [f]).
Beginning with the fourth statutory factor requiring the subcontractor to "own[] the capital goods and gain[] the profits and bear[] the losses of the business entity" (Labor Law § 861-c [2] [d]), Fleetwood argues that the Board erred in finding that the drywall constituted a capital good and, because it was Fleetwood that purchased and provided this material for the projects rather than the subcontractors themselves, that the fourth factor was not satisfied. Although the parties do not dispute that the subcontractors generally maintained ownership of other capital goods used to produce their work — to wit, the subcontractors' machines, equipment, work vehicles and tools — Fleetwood contends that the ownership of the drywall used in its construction projects is of no import because it should not be considered a capital good in the first instance. Inasmuch as the interpretation and meaning of the statutory term "capital goods" is a question "of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely [*3]on any special competence or expertise of the [Board]," and we are free to ascertain the proper interpretation from the statutory language and legislative intent (Matter of Belmonte v Snashall, 2 NY3d 560, 566 [2004] [internal quotation marks and citations omitted]; see Matter of Matzell v Annucci, 183 AD3d 1, 4 [2020]). To that end, "[t]he statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]; see Matter of Estate of Youngjohn v Berry Plastics Corp., 36 NY3d 595, 603 [2021]; Matter of Tuerk [Adelchi Inc.-Commissioner of Labor], 184 AD3d at 298; Matter of Matzell v Annucci, 183 AD3d at 4).
Although the Fair Play Act does not define the term "capital goods," the plain meaning of that term is commonly defined and understood as "[g]oods (such as equipment and machinery) used for the production of other goods or services" (Black's Law Dictionary [11th ed 2019], capital goods) or "products (such as factory equipment and tools) that are used to make other products" (Merriam-Webster Online Dictionary, capital goods [https://www.merriam-webster.com/dictionary/capital%
20goods]). Ascribing the plain and ordinary meaning to the term capital goods, the Board could, on the record before it, rationally conclude that the term included the drywall at issue, as it was used during, and for, Fleetwood's construction projects and was integral to the production of the building structures themselves (see generally Alicia Tuovila, Investopedia, Capital Goods, https://www.investopedia.com/terms/
c/capitalgoods.asp [Dec. 27, 2020] [including "fixed assets, such as buildings" in the definition of a capital good]).[FN3] The fact that drywall or similar goods might not always be a depreciable capital asset over the course of its existence for tax purposes, as compared to a fixed machinery or other equipment, does not preclude it from being considered a capital good (see generally Alicia Tuovila, Investopedia, Capital Goods, https://www.investopedia.com/terms/c/capitalgoods.asp [Dec. 27, 2020] [including "paint used by painters" as a capital good]).
Here, the record evidence consistently established that the subcontractors would own, provide and bring various equipment needed to perform the drywall installation and finishing, most or all of which could be considered capital goods. The testimonial evidence also demonstrated, however, that Fleetwood purchased and provided the drywall necessary for the subcontractors to perform their drywall installation and finishing services. Inasmuch as the subcontractors did not own or provide the drywall to be used in performing their services, we find that substantial evidence supports the Board's finding that Fleetwood failed to demonstrate, on this record, that the subcontractors, as the purported separate business entities, owned the capital goods for purposes of satisfying [*4]the fourth statutory factor of the separate business entity test (see Labor Law § 861-c [2] [d]). In light of our conclusion that the fourth statutory factor was not satisfied, we need not address, and take no position regarding, the parties' contentions relative to the remaining factors of the separate business entity test, including the third and sixth factors addressed by the Board (see Labor Law § 861-c [2] [c], [f]; see generally Matter of Tuerk [Adelchi Inc.-Commissioner of Labor], 184 AD3d at 298-300). To the extent that Fleetwood's remaining contentions, including its claim that the ALJ improperly denied its request to call the Department's auditor as a witness, are not rendered academic in light of our decision, they have been considered and found to be without merit.
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: As relevant here, the Fair Play Act defines "construction" as "constructing, reconstructing, altering . . . rehabilitating, repairing, renovating . . . any building, structure, or improvement" (Labor Law § 861-b [1]), and defines "contractor" as any "legal entity . . . who engages in construction as defined in [the Fair Play Act]" (Labor Law § 861-b [2]; see Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d at 1375 n 3). There is no dispute here that Fleetwood is a contractor and therefore subject to the presumption contained within the Fair Play Act.

Footnote 2: "In order to be considered an independent contractor, a person must satisfy three criteria set forth in the statute: (a) the person must be free from the contractor's direction and control in performing the service; (b) the service performed must be outside the usual course of the contractor's business; and (c) the person must be customarily engaged in an independently established occupation similar to the service performed" (Matter of Barrier Window Sys., Inc. [Commissioner of Labor], 149 AD3d at 1374-1375; see Labor Law § 861-c [1] [a]-[c]). This new statutory test is sometimes referred to as the ABC test (see Governor's Approval Mem, Bill Jacket, L 2010, ch 418). Although the Board also found that Fleetwood failed to satisfy the ABC test, that finding is not challenged on appeal.

Footnote 3: Our determination in this respect should not be construed as holding that drywall will always constitute a capital good within the embrace of Labor Law § 861-c (2) (d). Fleetwood, as the party who bore the burden to demonstrate that the 12 factors were satisfied, simply did not proffer any evidence that the drywall at issue should not be considered a capital good, nor did it make that argument during its hearing summation before the ALJ in response to the Board's express contention that the drywall fell within the definition of that term. We leave open the possibility that, in a future case, the record evidence could establish otherwise.